Case number 23-1462, Douglas Milczak v. General Motors LLC. Argument not to exceed 10 minutes for plaintiff, 5 minutes for amicus, and 15 minutes for defendant. Mr. Franke, you may proceed. Good morning, your honors. May it please this court, Eric Franke, appearing on behalf of the appellant, Douglas Milczak, who is here as well. I think the first major legal error that the lower court committed was not properly applying the totality of the circumstances test for a hostile work environment claim based on age. The lower court cited to the Supreme Court's decision in Harris, which set forth the parts of that test, but did not properly apply it. I'll get into that in a moment, but I think there's really no dispute based on the case law cited by myself and by General Motors Council that that is in fact the test. Further, that there are certain parts to that test that the lower court violated. First, that the victim of the hostile conduct does not have to complain to management that he or she is being subjected to hostile conduct based on a particular protected category. Second, that in the totality of the circumstances analysis, the court can look at conduct that is not overtly age-based in its consideration of all of the circumstances which give rise to the claim. I would cite this court to the case decisions in Williams, in Crawford, and in Thornton, which all affirm these general principles of the totality of the circumstances test. Getting back to the test set forth by Harris, which I don't think the court properly applied, the Supreme Court indicated that whether an environment is hostile or abusive can be determined only by looking at all of the circumstances. This court is well aware that they may include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Before I get into the specifics here, I think what the court did violates the principles set forth in Williams and also in the case law cited by the defendant. The court disaggregated all of the events that the plaintiff cited at the lower court, which constituted the events within the hostile work environment. The lower court found that there were six separate categories of conduct that supported the plaintiff's claim in general, but looked at them in isolation and viewed them in a way that I believe was most favorable to the defendant. I think that's significant because the court in Williams, in an analogous situation of a hostile work environment based on gender, indicated that that type of disaggregation makes it easier when looking at each of the events in isolation for the court to determine that there's not a question of fact on the totality of the circumstances in support of a hostile work environment based on age. I think that raises an interesting question about how we view the different bases of a hostile work environment claim. Some of them, like you say, may have explicit references to age and some don't. How do we determine what we should look at in view of a hostile work environment claim and what inferences can we make? If there are some that are explicitly age-related, do then we have to assume all the events are age-related? Do we have to kind of look to see, well, are some of these events or things that happened just because, I don't know, there were some mean colleagues or some mean supervisors but they weren't actually related to age? How do we sort through that? Well, I think, Judge Blumenkatz, it's hard to do that in a way that doesn't result in what the lower court did here, meaning that if you get into a situation where you're trying to separate directly age-hostile conduct from conduct that might not be overtly age-hostile, the court runs the risk of falling into what's prohibited by Williams, that is an impermissible disaggregation. However, I would submit that as a baseline, the court needs to consider in the total context whether the events that are occurring, which might not be overtly age-related, somehow bear some relationship to those that are overtly age-related in terms of temporal proximity, in terms of the same actors, if you will, such as Mike Lazaroff, in terms of whether or not these, let's say, non-overtly age-hostile events result in one of the factors that must be shown in support of an age-hostile work environment claim, such as that the age-hostility interfered with the employee's work itself. So I would say that if you are applying the totality of the circumstances and you are looking at items such as temporal proximity, if you're looking at same actors, if you're looking at whether or not the context is such that the frequency of the overtly age-hostile events occur closely in time to those that are not age-hostile, you can have a baseline where the court can say some of these are clearly far afield and some of those aren't, which I think would apply in this situation, because I think if you look at the frequency and the severity of the age-related harassment that my client endured... Is it based upon age or upon race or sex or something that has to have one of those underlying reasons, right? Yes, it does. You're claiming age. Yes. Not race. No. Not sex. No, but I think the analysis would be the same. I think it's clear under this circuit's case law that the hostile work environment test is the same whether it's under Title VII or the ADEA. So, no, in this case... I'm just going to pull out one, the decapitated head portion that was left on this desk. I know it's not a real head, but that part, how does that relate to age as it relates to hostile work environment? How is that a hostile act based on age? Well, I think my client testified that the picture of the head with the eyes poked out was of an older individual based on the long, stringy, apparently white or gray hair. So I think that based on his testimony and based on the photograph itself, it looks like it's related to his age. And this comes soon after. He's transferred to a different area where prior to the transfer he had experienced very severe harassment, I would submit, based on his age, including finding a picture on May 22, 2019, which was in his work area, which had him depicted as a mouse caught in a trap. And mind you, Your Honors, it's an old dead mouse getting, as the lower court characterized it, sexually assaulted by other mice who had the labels of the various trades on them. In addition, during this same time period, he had experienced the remarks from his direct supervisor that he was an old fart, an old fucker, an old motherfucker. So when you look, again, at the totality of these circumstances, starting from, let's say, December of 2018 until, at least for purposes of this case, he goes off on leave in January of 2022, you can see, at least arguably, that there's a course of conduct that was directed at his age. While not all of the events were overtly age-related, but in the context of the totality of the circumstances analysis set forth by the Williams case, which I think really is the seminal case in this circuit on the totality of the circumstances requirements, that looking at these facts that may not be overtly age-related in the context of very severe harassment, which is overtly age-related, given their temporal proximity and my client's explanation that these events did not occur in a vacuum and did occur based on some of his complaints in the form of retaliation, but also were given to him or perpetrated by Mr. Lazaroff and others that he complained to. Let me ask you this about the discrimination, the sort of disparate treatment claims you have there. In your brief, you don't mention pretext. You don't discuss pretext. So what do we do with that? So assuming you can make a prima facie case on those, what do we do with the fact that you don't really address the pretext? Your Honor, I think that this Court has to remand it back to the District Court because the District Court ended its analysis without doing anything about pretext. I think that the lower court placed a harsh burden on the plaintiff to make out the prima facie case of discrimination, essentially said that he hadn't and then ended the analysis. My understanding of the principle here is that if there's an issue that's not been passed on by the lower court, it shouldn't be brought up here. But I think in this circumstance, if this Court agrees with my position on the discrimination claim, then I think it has to be remanded to address that issue. Thank you. Thank you. I see my time is up. Thank you very much. Good morning, Your Honors, and may it please the Court. Amos Blackman with Equal Employment Opportunity Commission. Contrary to the District Court's analysis below, a reasonable jury could find that GM's involuntary transfers and reassignment of Mr. Milsak caused a greater than de minimis impact on the terms and conditions of his determination under this Court's precedent in Threat v. City of Cleveland. Threat canvassed this Court's decisions, which use a variety of formulations for the threshold for when a change in terms or conditions is actionable, and held that those various formulations are best understood as innovations that are shorthand for the operative words of the statute while incorporating a de minimis exception. Threat then went on to specifically hold that a employer-required shift change from a preferred day to another day or from day to night exceed any de minimis exception and any fair construction of the statutory language. Under this controlling precedent, Mr. Milsak's transfers and reassignment are actionable. Jean? Can you tell us, Counsel, and you mentioned multiple times in the footnotes in your brief about the pending Muldrow case and how it may affect the standard for adverse action and what dependency of that case means for our decision here? The EEOC's position is that the Court can reverse and remand on this issue without Muldrow being decided. It is obviously the Court's option to hold the case for that decision, but the Supreme Court limited its question in that case specifically to whether a transfer alone with nothing more is actionable. And it's not necessary on the facts of this case and under this Court's precedent for the Supreme Court to answer that question in the affirmative for Mr. Milsak to prevail on this issue. And is that because in addition to just a transfer or reassignment, there are corresponding allegations about why the terms and conditions of employment have changed, things like different hours, different people you have to work with, less opportunity for overtime? Is that why you don't think we have to wait for the Muldrow decision? Precisely, Your Honor. So that's what the three courts said. The three court said that under this circuit's precedent, there is something more that needs to be shown, that the transfer alone is not enough. And described and said the way to harmonize all these various formulations is to understand it against the backdrop of a de minimis exception. And that's precisely what Mr. Milsak has shown here, that the change in co-workers, co-workers who are hostile to his supervision, not being granted the tools to work with those co-workers, the change in hours, the change in responsibilities, the lack of use of his expertise and skills, those all clearly exceed a de minimis threshold and are therefore actionable. You're saying it's actionable just because of the transfer, along with all these other pieces of evidence, right? Yes, Your Honor. Yes. You understand my question. You're saying it's actionable just because he gets transferred to another plant or something else, along with these other things, the language of supervisors and things like that. If I understand Your Honor's question correctly, the EEOC's position is the that this court's precedent requires something more. And that's where Mr. Milsak's showing that he was in worse conditions as a result of those transfers clears this court's additional threshold above and beyond the text of the statute. Does that answer your question, Justice Siler? Yes. I suppose so. You're saying the transfer plus these other evidence makes it actionable. Yes, Your Honor. In my remaining time, unless there's further questions on the transfer issue, I just want to briefly address the second issue. Mr. Milsak absolutely satisfied the ADA's charge filing requirement with respect to his hostile work environment claim. Under Randolph, he absolutely generally alleged his hostile work environment claim, UNICEF Pinnacle Airlines has no application where the claim appears on the face of the charge. And he specifically mentioned harassment in his charge, right? He had an entire section headed harassment that included discreet incidences of harassment based on age as well as an ongoing course of conduct based on age. Thank you, Counsel. Thank you. Good morning, Your Honors. I'm Donnie Buehler from Ogletree Deacons representing Defendant Appellee General Motors. I'd like to pick up or start where Judge Blomquist questioned to Mr. Franke, which is what was Judge Steeves supposed to do in evaluating all these 19 incidents for terms of hostile work environment? The Sixth Circuit has already answered that. And in Amini v. Wright-Ade, the quote was, separate the weaf from the chaff. That's at 819 Fed Appendix 347. And that's exactly what Judge Steeves did here. The Amini court relied on the Williams v. CSX case. It's a little confusing because two Williams cases here. The cases that Mr. Franke is relying on is Williams v. GM. That's from 1999. He's also relying on the Thornton case from 2008 and the Crawford case from 1996. The Williams v. CSX case is from 2011. And the Sixth Circuit said you start the analysis by looking at what is the age-based harassment. You separate out what's based on age, what's not. Then you move to does that specific harassment create a severe and pervasive work environment that is objectively intolerable? You would agree, counsel, that when we take your position that we have to do the separation out, that we're not only looking at explicit age-based comments. Like I think your friend would say, well, if you have the same actor, for example, if you have a supervisor who is making some explicit age-based comments but then makes some other just very mean comments that might not directly reference age, you might still put that in the totality because there's hostility and you know this person has expressed it based on age. Would you agree with that analysis? Not entirely. I think you have to look at two separate things. You do have to separate them out. You also have to look at the indicia of the situation. Here the decision-makers are separate of the events that took place, and the comments that took place before December 2018 had nothing to do with age. So there's no reason to infer some age-based tinge to them prior to any age-related comment being based. That's why you separate out the two. The second point that I would raise is why the district court got this right is the relatively high bar, which they quoted in the Phillips v. UAW case. There has to be some objective criteria that the GM should be liable for this. In this case, the only incidents reported as age-based harassment was a July 16th meeting between the plaintiff, Mr. Milchak, and his then supervisor, Mr. Donlan, raising the three age-related comments. The other incidents, which the court said may or may not be based on age, the picture with the eyes poked out of the Michael Jackson CD, admittedly the plaintiff never reported any of that to GM. So there is a fourth element that there has to be a basis for liability on the employer. That's simply not met here. In terms of the inappropriate, highly inappropriate, unprofessional mousetrap picture, that was a clip art picture. It's not based on age. GM acted promptly, thoroughly to address that, did a fulsome investigation, interviewed the plaintiff twice, interviewed over 15 employees in the area, reviewed computer or print logs, unable to identify the culprit, instituted corrective action by making everyone go through anti-harassment training, all the employees in the area. And not once during that investigation, it's undisputed, did the plaintiff ever raise to GM, he admitted that he never raised to GM, that he thought that had anything to do with his age. So I think you can separate that out. I want to move to the argument raised by counsel for the EEOC about the adverse action on the disparate treatment claim under the ADEA. First, I think you've got to step back and look at this is not an outcome determinative issue in our case. It's one element within the McDonnell-Douglas framework of the prima facie case. Here, the adverse argument, adverse action element, the EEOC and the plaintiff argue, is satisfied by these transfers and one shift change. What I would say in response to that is that the cautious court and the white court in the Sixth Circuit got it right. It's not a wide brush. You look at the individual circumstances in each case, and that's what you have to do here. You have to look at the undisputed facts of what was going on. There was an unallocation of the plant where Mr. Milchak worked. Every salaried employee had to find a new job. Some of them transferred out of state. Others moved to different locations. Others were accepted voluntary buyouts. Others were involuntarily laid off. Within that context, transferring Mr. Milchak to a different position within the same plant, which, by the way, it's undisputed, all these employees filled out a form. They ranked where they wanted to be. This was his number one location where he stayed. GM made the decision to reassign him twice during that unallocation year to keep him in his preferred location. The second point is the Threak case, totally different set of facts. In that case, there was no dispute. It was a direct evidence case. The supervisors admitted we're making the decision what shifts to assign people to based on their race. We don't like the racial makeup, so that's why we're pulling some people from this shift and assigning them to this shift. We're doing that based on race. And they did it contrary to seniority rights. So the officers involved there had seniority rights. Well, you don't disagree that if there are transfers or reassignments that and maybe then the employer later on when the burden shifts can explain why they had to do that. But for the purpose of the prima facie case, if you're saying that I'm transferred to a place where the terms and conditions of my work are awful, look, I've got to take the night shift now or I don't have any opportunity for overtime. So my overall pay is going to decrease. These are pretty classic things that our court has looked at as adverse action for the prima facie case. It seems like the points that you're making to me about the necessity and that they were actually really trying to work within where Mr. Melchak wanted to be location-wise, that's the next step, right? When the burden shifts to you to show legitimate reason, hey, we moved him because, gosh, we were retooling a plant and we didn't want to fire him. I think there's certainly a next-step analysis that needs to be done. But I think what White said is you have to look at the indicia of each case. And even what the three courts said is the discrimination term, it's undefined, but there's a, quote, materiality threshold that prevents the undefined word discrimination from commanding judges to supervise the minutia of personnel management. And that's at the adverse action. So certainly had the transfers or the reassignments here docked him pay or had a demotion where he wasn't supervising people. Or we have the overtime allegation. That is all that is, is an allegation? No, but we're summary judgment. We're going to take the facts as plain as the district court found. At this stage, maybe later at trial they would think, oh, this allegation is no good. But right now we don't get to decide that. Well, I think that in summary judgment what the court found and what's actually in the record is that's all that is, is an allegation. And under the Anderson case, you need probative evidence to support an allegation for it to be credible on summary judgment. It's absolutely absent in the record here. The only thing in the record is plain as it is. Mr. Mills never testified in his deposition that he had less overtime opportunity. He testified that he was a salaried exempt employee and that the overtime was discretionary within his management and that at certain times he got overtimes and at certain times he didn't. He did say that by the reassignment to second shift there was a potential reduction, but there's no evidence that he was getting it before or that he actually had that reduction outside his own statement. That's not corroborated. But, yes, he did testify something to that effect, Your Honor. But, again, if you step back and look at it, that's the adverse action. Even if you get past that, there's still another prima facie element that he doesn't meet, which is that there were younger, similarly situated people that were treated better than him. Again, the record on that point is undisputed. The people here, as Mr. Milchak admitted, quote, everyone was worried about their jobs. There were people moving out of state. There were people being laid off. The only evidence is that a younger person, five years younger than Mr. Milchak, transferred during the unallocation year from the Deham plant near Detroit in Hamtramck out of state to Toledo to keep his job. And he took a different role there. So there's no evidence that any younger person wasn't subject to these same types of efforts. So the prima facie case falls for two reasons. And then even if you get past the prima facie case, there's legitimate reasons, again, undisputed, about what was going on here and the reasons for these transfers. The reason for the transfer to GA in January was because the prior position was obsolete. Mr. Quigley, who was the GA, took another job in Flint. To keep Mr. Milchak at his preferred site, they moved him into that role. The move to Body Shop, same thing. There was a need for his conveyor expertise. They moved him there to maximize the personnel in the last six months of production. Second shift, the contractor who was working cut because of cost savings. None of this is disputed. There's no evidence that any of that is a pretext. There's a pretext behind any of that to discriminate against Mr. Milchak and his age. And he waived the argument. And in terms of the other issues on appeal, I'd just like to briefly touch on them. The first is the evidentiary issue. Most of what is cited as part of the record on appeal comes from the timeline of events and the unsworn declaration that the court properly excluded. Again, there's multiple reasons that that decision was correct. They don't meet the threshold requirements under 56. They're not sworn to under oath. They're not made under penalty of perjury. In addition to that, they don't include facts based on personal knowledge. And basically the argument is, well, it was put in front of him at his deposition. He said it was true and accurate, so all of a sudden you can consider it on 56. The case law is clear that's not the case. If that were, then all you'd have to do is show the complaint to the plaintiff at deposition and say it's true and accurate, and all of a sudden you've got summary judgment evidence. That's not the case here. Finally, it contradicts his deposition testimony in a number of ways. The court was proper in excluding it. In terms of the failure to exhaust argument, Unis does control. And what happened here is there was two references under the quote-unquote harassment section of the charge, one reference to an age-related comment and one to the mouse trap picture. Everything else is just like, and there were actually three or four in Unis similar, but everything else is discrete adverse actions that they're trying to use to support a disparate treatment claim. Not what we have here. And regardless, even if it was exhausted, as we already talked, the hostile environment claim fails anyways. Last question, Element. Can I ask you, it's not a jurisdictional issue for us, whether someone exhausted or not. It seems to be more of a process requirement so that the agency is on notice and can do a proper investigation and is looking at all the facts. We have the agency here telling us, hey, charges like this are enough. We would be put on notice to look at a hostile work environment claim. Why doesn't that kind of resolve the exhaustion issue? Well, because I think the exhaustion issue, while not jurisdictional, still has case law precedent that it's something you have to do before you can come to federal court, and they did it here. That said, like I mentioned, even if it's exhausted, it fails anyways. And I guess to that point, I guess the last claim I just want to mention briefly, the retaliation claim, we'll rely on the briefs. The protected activity here, they can't meet the prima facie case because they're separate decision makers, have no evidence that they knew of any of these actions. And again, pretext waived there as well, and also it's in the record, which brings me to the last point I wanted to address. This court does not have to remand for that analysis. This is a de novo review. The record is full. We briefed it, the pretext argument, before the district court. It just never got there because it didn't need to. There's no need to remand it to decide that issue. If you feel it's necessary, the record's before you. You can perform that analysis and determine there's absolutely no evidence of pretext here. What happened to him? Is he still working for GM? Yes, he is, Your Honor, and that was what I was going to close with. The ADEA exists to prevent and correct age discrimination. On this record, we've got a plaintiff that's been continuously employed by GM at his preferred location, continuing to receive annual raises of the thousands of dollars, well into the six-figure salary, bonuses of over $15,000 a year, six weeks of paid vacation, continues all to this day. If we had some problem with his age, why would GM continue to do that? The bottom line is there's simply no viable claim under the ADEA here. The court got it right. There's nothing for a jury to decide. We'd ask you to affirm based on our briefs and this argument. Thank you. Thank you, counsel. Thanks to all counsel for your briefs and arguments. We can adjourn.